[Cite as *State v. Adams*, 2012-Ohio-4382.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

LARRY V. ADAMS

    Appellant

C.A. No.    26009

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 2010 12 3381

DECISION AND JOURNAL ENTRY

Dated: September 26, 2012

CARR, Judge.

{¶1}    Appellant, Larry Adams, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    This case arises out of an armed robbery that resulted in the death of Delwin Isaac, Jr. Adams was Isaac's accomplice during the incident and he was ultimately convicted under a felony murder theory in regard to Isaac's death.

{¶3}    On December 21, 2010, the Summit County Grand Jury indicted Adams on a myriad of charges stemming from the incident. After a jury trial, Adams was found guilty of murder, aggravated robbery, burglary, tampering with evidence, and having weapons while under disability. The trial court sentenced Adams to a term of life imprisonment with possibility for parole after 15 years on the count of murder, and a two-year prison term on the count of tampering with evidence. The prison sentences relating to the remaining counts were ordered to

be served concurrently with the sentence for murder, while the sentence for tampering with evidence was ordered to be served consecutively to the sentence for murder. In total, Adams was sentenced to a term of life imprisonment with eligibility for parole after seventeen years.

{¶4} Adams filed a notice of appeal and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

APPELLANT'S CONVICTION FOR TAMPERING WITH EVIDENCE IS UNCONSTITUTIONAL AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 10 AND SIXTEEN OF THE OHIO CONSTITUTION, AND SECTION 2921.12(A)(1) OF THE OHIO REVISED CODE.

{¶5} In his sole assignment of error, Adams argues that his tampering with evidence conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. This Court disagrees.

{¶6} Adams was convicted of violating R.C. 2921.12(A)(1), which states, "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * "[a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

{¶7} In support of his assignment of error, Adams argues that the State never established that he attempted to conceal the firearm in question. Adams acknowledges that "there is circumstantial evidence that [Adams] brought the gun from the murder scene at 608 Wilson Street in Akron to the house of Brandy Becker and Kevin Jarvis." Adams emphasizes, however, that there is nothing to indicate that he would have removed the gun knowing that a police investigation was in progress or was about the be instituted. In support of this point,

Adams cites to the Second District's decision in *State v. Like*, 2d Dist. No. 21991, 2008-Ohio-1873, where the court held that the mere fact that the firearm was not located at the crime scene was not enough to support a tampering conviction. Adams also argues that there was no evidence that he would have removed the gun with the intent to impair its evidentiary value, and that his actions were consistent with someone removing the gun so that it would not be used against him.

{¶8} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley*, 9th Dist. No. 19600, 2000 WL 277908 (Mar. 15, 2000). "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." *Id*., citing *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶9} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to

the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, ¶ 11. Rather,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

> Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id*.

*State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.

{¶10} This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

**Sufficiency**

{¶11} Although Adams was also convicted of murder, aggravated robbery, burglary, and having weapons while under disability, his assignment of error pertains solely to his conviction for tampering with evidence. Nineteen witnesses testified at trial and over one hundred exhibits were admitted into evidence. While Adams was ultimately held responsible for the death of his accomplice, Isaac, our primary focus in resolving his assignment of error will be the evidence relating to the tampering with evidence conviction.

{¶12} On the night of November 5, 2010, Adams and Isaac went to Darnell Roper's apartment in Akron to purchase drugs. The two men purchased marijuana from Roper and left the apartment in a car driven by Kevin Jarvis. After the men shared the joint they had purchased, they returned to Roper's apartment a short time later. When Roper opened the door, Isaac pulled

a gun and he and Adams proceeded to rob Roper at gunpoint. Roper testified at trial that the gun Isaac was holding was "green and black." Ryan Rogers, who happened to be smoking marijuana in the apartment at the time of the robbery, testified that the gun was "camouflage" colored in that "it was green, [and] looked like an Army gun." Roper gave the men all of the cash in his pockets and an ounce and a half of marijuana, but Isaac and Adams demanded more money. The men went into the bedroom where Roper had a safe bolted to the ground in his closet. Roper gave Isaac several thousand dollars from the safe. Isaac then said, "Stop playing with me. We want everything," and fired gunshots at Roper that struck him in the thigh and calf. After being shot, Roper pulled a .38 Special out of the safe and shot both Isaac and Adams. After both men fell to the ground, Roper fled the apartment.

{¶13} Roper shot Isaac in the chest during the exchange of gunfire and Adams was shot in the neck. Adams testified at trial that he "took off" after Roper but he could not continue his pursuit because he heard Isaac calling out for help. Adams dragged Isaac down the stairs and out to the grassy area outside of the apartment. Adams testified that Isaac had a .45 caliber handgun in his hand as Adams dragged him out of the apartment. Adams noticed Roper's identification card on the steps as he dragged Isaac out of the apartment. Adams testified that he picked up the identification card for evidentiary purposes so that he could identify the shooter.

{¶14} After he dragged Isaac out of the apartment, Adams ran down the road to the house of Kevin Jarvis and Brandy Becker. Adams was living with Jarvis and Becker on a temporary basis at the time of the incident. When Becker answered the door, she observed that Adams was bleeding from his nose and neck. Upon entering the home, Adams removed his black hoodie and white t-shirt and ran into the bathroom. Meanwhile, Jarvis was in a parked car on the street that runs parallel to the street where the robbery occurred. Jarvis was waiting to

pick up Adams and Isaac after they bought more drugs. He received a phone call from his girlfriend, Becker, informing him that Adams had been shot in the neck and was at their house, and that Isaac had also been shot. Jarvis called 911 and drove to his residence.

{¶15} When Jarvis entered his house, he saw Adams standing shirtless in the living room. Jarvis observed that Adams, who could barely speak, was bleeding from the mouth and had suffered a neck wound. Jarvis also noticed that Adams had a gun in his hand. Jarvis further testified that he observed Adams "walking back and forth from the kitchen to the living room, pacing," and that he later noticed the gun on the kitchen table. Jarvis recognized the gun because it was a .45 caliber handgun that he had been storing in his house for a friend. Adams told Jarvis that his cousin Isaac was "[l]aying in the grass up the street." Jarvis then ran out the door to find his cousin, leaving Adams behind at the house. Jarvis testified that he arrived at the scene at the same time that the EMS crew was arriving. Adams also returned to the scene thereafter. Adams testified that he told Becker to call the police prior to returning to the scene. Adams further admitted at trial that he "tossed" the bag of marijuana he had obtained during the robbery prior to returning to the scene. Adams admitted that he discarded the marijuana because he "didn't want to walk towards the police with it."

{¶16} Isaac subsequently died due to injuries sustained during the robbery. Jarvis testified that "four or five" days after the incident, he received a call from Adams' girlfriend asking him to "check in the basement" for the gun. During the period between the night of the incident and the time he received the phone call from Adams' girlfriend, Jarvis did not know where the gun was located. When Jarvis found the gun, he wrapped it in a shirt, put the gun in a bag, and took it to a location close to half a mile away and threw it near the side of a building. Subsequently, when Jarvis was interviewed by law enforcement, he led the police to the location

of the gun. Photographs of the gun admitted at trial showed that the gun matched the description of the gun used during the robbery.

{¶17} The evidence presented at trial was sufficient to convict Adams of tampering with evidence in violation of R.C. 2921.12(A)(1). Adams has admitted on appeal that the record contains "circumstantial evidence that [Adams] brought the gun from the murder scene at 608 Wilson Street in Akron to the house of Brandy Becker and Kevin Jarvis." Adams further admits that "[t]he gun was used by the deceased, Isaac, during the course of the attempted robbery, and bullets matching the [.]45 caliber carried by Isaac were found at the home." It is well settled that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value." *Jenks*, 61 Ohio St.3d at 272. Moreover, Jarvis testified that he saw Adams holding the gun in the moments following the incident and the State presented DNA evidence linking Adams to the gun.

{¶18} Accordingly, this Court need only consider whether Adams knew an investigation was likely to be instituted and whether he removed the gun to impair its availability as evidence in the investigation. R.C. 2921.12(A)(1). In light of the evidence outlined above, we reject Adams' argument that he would not have had reason to know that an investigation was on the verge of commencing at the time he removed the gun from the crime scene. Adams himself testified on cross-examination that he picked up Roper's identification card for evidentiary purposes. Adams further testified that he told Becker to call the police prior to returning to the crime scene. Thus, Adams was cognizant of the fact that an investigation was likely forthcoming. Moreover, the State presented evidence that Adams and Isaac participated in an armed robbery that was witnessed by numerous people. Three people suffered gunshot wounds during the incident, and it was apparent to Adams at the time he fled the scene that Isaac, who

was in possession of the gun during the robbery, was lying outside the apartment and in need of immediate medical attention. Adams removed his black hoodie and t-shirt and disposed of marijuana he stole during the robbery, all of which could tie him to the crime, prior to returning to the crime scene. This evidence demonstrates that Adams was aware that a criminal investigation was imminent.

{¶19} Adams relies on the Second District's decision in *Like* for the proposition that the mere fact that a firearm was not at the crime scene is not itself sufficient to support a tampering with evidence conviction. *Like*, 2008-Ohio-1873, at ¶ 24. Here, however, the State presented evidence that Adams took steps to impair the availability of the gun in an investigation. Adams concedes there was circumstantial evidence he removed the gun from the crime scene. Adams had the gun in Jarvis and Becker's home during the moments following the crime. Jarvis left the home and ran to Isaac's aid before he could have seen what Adams did with the gun. In the ensuing days, Jarvis received a call from Adams' girlfriend indicating that the gun was in the basement of Jarvis' home. Jarvis testified that he was unaware of the gun's location prior to that phone call. This evidence, when construed in the light most favorable to the State, was sufficient to demonstrate that Adams removed the gun from the crime scene and stashed it in Jarvis' basement in an attempt to impair its availability in the impending investigation.

## Manifest Weight

{¶20} We note that Adams offers a limited argument in his merit brief that his conviction was against the weight of the evidence. Our review of the record suggests that Adams' conviction for tampering with evidence was not against the manifest weight of the evidence. While Adams' testimony sharply contrasted the testimony offered by the State's witnesses, this Court will not overturn the trial court's verdict on a manifest weight of the

evidence challenge only because the trier of fact chose to believe certain witnesses' testimony over the testimony of others. *State v. Crowe*, 9th Dist. No. 04CA0098-M, 2005-Ohio-4082, ¶ 22. Although Adams argues on appeal that his actions were consistent with someone removing the gun so that it would not be used against him, his own testimony at trial was that he did not touch the gun on the night of the incident. Adams' testimony in this regard was also contradicted by Jarvis, who said he saw Adams with the gun in the moments following the incident. The State also presented DNA evidence linking Adams to the gun. Because the State presented ample evidence that Adams removed the gun from the crime scene and stashed it in Jarvis' basement in an attempt to conceal what had happened during the armed robbery, and Adams' version of these events does not overcome this evidence, we conclude that this is not the exceptional case where the evidence presented at trial weighed heavily in favor of Adams. *Thompkins*, 78 Ohio St.3d at 387.

{¶21} In light of this Court's conclusion that the trial court's judgment was supported by sufficient evidence and was not against the manifest weight of the evidence, Adams' assignment of error is overruled.

III.

{¶22} Adams' assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

MOORE, P. J.
DICKINSON, J.
CONCUR.

APPEARANCES:

NATHAN A. RAY. Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.