[Cite as *State v. Carr*, 2014-Ohio-806.]

STATE OF OHIO       )            IN THE COURT OF APPEALS
                         )ss:        NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT       )

STATE OF OHIO

      Appellee

      v.

RAHSHEEM J. CARR

      Appellant

C.A. No.      26661

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR 12 01 0289 (C)

DECISION AND JOURNAL ENTRY

Dated: March 5, 2014

HENSAL, Judge.

**{¶1}** Appellant, Rahsheem J. Carr, appeals from his convictions in the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

**{¶2}** During the late afternoon of January 11, 2012, Mr. Carr, Demarcus Williams, Robert Davis and some other men were hanging out at Mr. Davis's home located on Princeton Street in Akron. Mr. Williams noticed that a man he had an ongoing feud with, Marcus Minter, was sitting in a car that was parked in a driveway down the street. Mr. Williams told the men he needed money and that they could get some by robbing Mr. Minter. The men formed a plan wherein Mr. Carr and Mr. Williams would rob Mr. Minter. Afterwards, Mr. Davis would drive the men in a car owned by Mr. Carr's mother to the home of Mr. Williams's aunt. The target of the robbery was only supposed to be Mr. Minter.

{¶3} Phillip Anderson was sitting in the driver's seat of his car along with his two friends, Mr. Minter and Alexander Wells, when they were approached by Mr. Carr and Mr. Williams. Mr. Carr opened Mr. Anderson's door, pointed a revolver at him and demanded money while Mr. Williams did the same to Mr. Minter. Mr. Wells exited the backseat of the vehicle after he realized that he and his friends were being robbed, but remained a few feet away while the incident unfolded. Mr. Minter told Mr. Anderson to drive off. Mr. Carr told Mr. Anderson that if he did, he would shoot him. As Mr. Anderson accelerated, Mr. Carr shot him. Mr. Minter exited the vehicle and all the men fled the scene. Mr. Anderson's car rolled across the street until it came to rest at the opposite curb. A resident of Princeton Street drove Mr. Anderson to the hospital where he was pronounced dead shortly after his arrival.

{¶4} On February 14, 2012, Mr. Carr was indicted on one count each of felony murder, complicity to commit murder, aggravated robbery, and complicity to commit aggravated robbery, all of which had firearm specifications. Mr. Williams and Mr. Davis were also charged in the same indictment. The indictment was supplemented to change the subsection of the statute under which Mr. Carr was charged with aggravated robbery and to add one count each of aggravated murder with a gun specification and having weapons while under disability. The State dismissed the complicity charges and the matter proceeded to trial on the murder, aggravated robbery, aggravated murder, and having weapons under disability charges along with the attendant gun specifications. Mr. Carr and Mr. Davis had a joint trial, while Mr. Williams pleaded guilty to amended charges and testified against them. The jury convicted Mr. Carr of all charges, and he was sentenced to a combined prison term of 43 years to life.

{¶5} Mr. Carr filed a timely appeal of his convictions. He raises four assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY DENYING MR. CARR'S MOTION TO
SEVER HIM FROM HIS CO-DEFENDANT AND ALLOWING THE STATE
TO PROSECUTE MR. DAVIS AND MR. CARR TOGETHER.

{¶6}   In his first assignment of error, Mr. Carr argues that the trial court erred when it failed to sever his case from Mr. Davis's case for purposes of trial. This Court disagrees.

{¶7}   The law favors joinder. *State v. Miller*, 9th Dist. Lorain Nos. 10CA009922, 10CA009915, 2012-Ohio-1263, ¶ 17, quoting *State v. Merriweather*, 9th Dist. Lorain No. 97CA006693, 1998 WL 239773, *3 (May 6, 1998). Criminal Rule 8(B) permits two or more defendants to be charged in the same indictment if "they are alleged to have participated in the same act * * * or in the same series of acts * * * constituting an offense or offenses, or in the same course of criminal conduct." Criminal Rule 14 directs a court to grant a severance of defendants joined for trial if either the defendant or the state demonstrates prejudice. In order to preserve a claimed error under Criminal Rule 14, however, the defendant must renew his motion to sever either at the close of the State's case or at the close of all the evidence. *Miller* at ¶ 17. The alleged error is forfeited on appeal if the defendant fails to renew his motion. *Id.*, quoting *State v. Vu*, 9th Dist. Medina No. 11CA0042-M, 2012-Ohio-746, ¶ 37.

{¶8}   Mr. Carr and Mr. Davis were charged under the same indictment. The day before trial, when Mr. Davis moved to continue the case, Mr. Carr's attorney stated on the record that "[w]e quite frankly would prefer to have the trial or the cases tried separately[.]" He presented no argument to the trial court as to how he was prejudiced by the joinder of the two cases. The State argued against severance because neither Mr. Carr nor Mr. Davis made any statements against each other and its theory was that Mr. Davis was complicit in commission of the

offenses. The trial court denied the request for a continuance without ruling on whether or not Mr. Carr's case should be severed from Mr. Davis's case.

{¶9} To the extent that Mr. Carr's "prefer[ence]" could be construed as a motion, he forfeited any error with regard to severance of the cases as he failed to renew the motion at either the close of the State's evidence or the close of all the evidence. Because he forfeited the issue, he is limited to arguing plain error. Under Criminal Rule 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "To rise to the level of plain error under Crim.R. 52(B), an error must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings." *State v. Simpson*, 9th Dist. Lorain Nos. 12CA010147, 12CA010148, 2013-Ohio-4276, ¶ 22. "Moreover, the decision of a trial court will not be reversed due to plain error unless the appellant establishes 'that the outcome of the trial clearly would have been different but for the trial court's [alleged error].'" *Id*., quoting *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996).

{¶10} Mr. Carr argues that the trial court committed plain error in failing to sever his case from Mr. Davis's case. He maintains that he was prejudiced by the joinder of the cases because both he and Mr. Davis had antagonistic defenses. Specifically, he maintains that Mr. Davis's defense counsel acted as a "second prosecutor" during the trial, which hindered his ability to present a defense. Mr. Carr further contends that, because the evidence against Mr. Davis was "different and stronger," his chances for acquittal were weakened given the fact that many of the witnesses were acquainted with Mr. Davis from his residence in the neighborhood but not with Mr. Carr, who was from a different section of Akron.

{¶11} "While some defenses may be irreconcilable to the point that severance is required, '[m]utually antagonistic defenses are not prejudicial per se.'" *State v. Patel*, 9th Dist.

Summit No. 24024, 2008-Ohio-4692, ¶ 52, quoting *State v. Smith*, 9th Dist. No. 95CA006070, 1996 WL 27908, *3 (Jan. 24, 1996). The defendant must show actual prejudice in order to warrant severance of the cases. *Id.* The mere risk of injustice is insufficient to demonstrate actual prejudice. *State v. Groce-Hopson*, 9th Dist. Lorain No. 03CA008377, 2004-Ohio-2949, ¶ 13.

{¶12} Both Mr. Carr and Mr. Davis were charged with offenses that stemmed from the same incident and involved the same evidence. While both Mr. Carr and Mr. Davis proceeded to trial on charges of felony murder, aggravated robbery and having weapons while under a disability, only Mr. Carr was charged with aggravated murder. Neither defendant testified on his own behalf at trial so as to create a *Bruton* problem. *See Bruton v. United States*, 391 U.S. 123, 132 (1968) (a co-defendant's statement that implicates a defendant cannot be used in a joint trial unless the co-defendant is subject to cross-examination).

{¶13} Two witnesses, Marcus Williams and Shauntae Hill, initially told the police that Mr. Davis was the shooter. Mr. Williams testified that he told the police Mr. Davis shot Mr. Anderson because he thought Mr. Davis told the police that he was the shooter. According to Mr. Williams, after reading about Mr. Davis's statements to the police, he changed his version of the events to reflect that Mr. Carr shot Mr. Anderson.

{¶14} Shauntae Hill, a passenger in a vehicle that was parked in a nearby driveway, testified that she initially told the police that she saw Mr. Davis walk up to Mr. Anderson's car when she had not. According to Ms. Hill, she was angry at Mr. Davis for giving the police her name as a possible witness when she had pending criminal matters, so she implicated him in the murder. Ms. Hill admitted that she changed her story, and further testified that she did not know Mr. Carr, had never seen him before, and did not recognize the shooter.

{¶15} Mr. Carr fails to explain how the testimony of Mr. Williams and Ms. Hill, who both initially identified Mr. Davis as the shooter, actually prejudiced him. Rather, their testimony tends to support Mr. Carr's defense due to their initial identification of Mr. Davis as the shooter. In addition, Mr. Carr does not explain how he was prejudiced by the fact that several witnesses were acquainted with Mr. Davis but not with him. The evidence established that the incident occurred on the same street as Mr. Davis's home. Therefore, any eyewitnesses would necessarily be more familiar with Mr. Davis than Mr. Carr, who lived in another section of Akron.

{¶16} Regarding Mr. Davis's statements that Mr. Carr was the shooter, the record reflects that these statements were made during opening statements and closing arguments. It is axiomatic that "statements made by counsel in opening statements and closing arguments are not evidence[]" and the jury was instructed to disregard them as evidence accordingly. *State v. Frazier*, 73 Ohio St.3d 323, 338 (1995).

{¶17} While Mr. Carr claims that Mr. Davis attempted to discredit the only witness called on his behalf, the record reflects that no such attempt occurred. Mr. Carr called his mother, Sarina Lawrence, as a witness. Ms. Lawrence testified on direct examination that, after she returned home from running errands at 3:00 p.m. on the day of the incident, her car never left the driveway until she left for work at 11:45 p.m. According to Ms. Lawrence, it was not possible for someone to move her car without her knowledge as it made a distinctive noise when it was turned on. Mr. Davis's counsel cross-examined her about additional details surrounding the sounds her car made and where it was located on the day of the incident, but did not try to discredit any of the testimony she gave on direct examination.

{¶18} Moreover, while Mr. Carr expressed a "prefer[ence]" to sever his case from his co-defendant's case, he failed to present the trial court with any substantive reasons that he was prejudiced. It is incumbent on a defendant claiming error under Criminal Rule 14 that "he * * * furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial * * *." *State v. Torres*, 66 Ohio St.2d 340 (1981), syllabus. Mr. Carr made a very limited argument in his oral motion to sever that did not include any discussion about the factors that tended to show he was prejudiced by the joinder of the cases for trial.

{¶19} Mr. Carr has not demonstrated that he was actually prejudiced by the joinder of his case with Mr. Davis's case at trial. Accordingly, he has not demonstrated that it was plain error for the trial court to fail to sever the cases. His first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

MR. CARR'S COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A WRITTEN MOTION FOR SEVERANCE PURSUANT TO OHIO RULE OF CRIMINAL PROCEDURE 14, FAILING TO RENEW[] THE ORAL MOTION FOR SEVERANCE, AND FAILING TO PROVIDE THE COURT WITH EVIDENCE THAT MR. CARR SHOULD BE SEVERED FROM HIS CO-DEFENDANT.

{¶20} In his second assignment of error, Mr. Carr argues that his trial counsel rendered ineffective assistance. Mr. Carr maintains that his trial counsel failed to adequately raise, argue and renew at the appropriate time during trial a motion to sever his case from Mr. Davis's case. This Court disagrees.

{¶21} In order to prove a claim of ineffective assistance of counsel, Mr. Carr must demonstrate that counsel's performance was deficient and that he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A "deficient performance" is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio

St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, a defendant must show that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id*. at paragraph three of the syllabus. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

{¶22} Mr. Carr maintains that his trial counsel was ineffective for not filing a written motion to sever his case from Mr. Davis's case as the failure to do so deprived the trial court of the opportunity to review the arguments in favor of severance. He cites to no authority and offers no explanation either that a motion to sever must be made in writing or that the failure to make such a motion in writing precludes a defendant from adequately presenting the arguments in favor of severance. We have consistently held that, "[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

{¶23} Further, Mr. Carr has not demonstrated that his counsel was deficient for failing to seek severance of his case from Mr. Davis's case. "It is well settled that an attorney's decisions not to file certain pretrial motions are 'debatable trial tactics [that] generally do not constitute a deprivation of effective counsel.'" *State v. Aaron*, 9th Dist. Summit No. 21434, 2003-Ohio-5159, ¶ 23, quoting *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995). The record reflects that the issue of severance did not arise until the day before trial when one of Mr. Davis's attorneys sought a continuance due to the theft of his laptop computer. While Mr. Carr maintains that "it [was] clear" that his attorneys, as a matter of strategy, did not wish for his case

to be tried with Mr. Davis's case, the impetus for the severance request was a continuance sought by Mr. Davis's counsel for an unrelated issue.

{¶24} In addition, as stated above, both Mr. Williams and Ms. Hill initially identified Mr. Davis as the shooter. The fact that both witnesses originally implicated Mr. Davis as the shooter further suggests that it was a trial tactic not to sever the cases so as to bolster Mr. Carr's chances of creating a question of reasonable doubt as to his involvement. This was evident in the closing arguments when Mr. Carr's attorney theorized that both Mr. Williams and Ms. Hill lied to protect Mr. Davis since they were all from the same neighborhood and knew each other.

{¶25} Regarding Mr. Carr's assertion that his trial counsel was deficient for failing to renew his motion to sever at the close of the evidence, this Court noted above that there was no evidence he was actually prejudiced by the joinder of his case with Mr. Davis. Accordingly, we cannot find that counsel was deficient when he failed to renew the motion to sever at the appropriate time during the trial so as to preserve that argument for appellate review.

{¶26} Since we found that Mr. Carr's trial counsel was not deficient, we need not address the second prong of the *Strickland* analysis concerning whether he was prejudiced. We have consistently concluded that "[t]his Court need not address both *Strickland* prongs if the defendant has failed to prove either one." *State v. Porter*, 9th Dist. Medina No. 12CA0061-M, 2013-Ohio-3969, ¶ 37. Mr. Carr's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

> THE COURT ERRED BY DENYING MR. CARR'S MOTION FOR (SIC) RULE 29 MOTION FOR ACQUITTAL AND THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶27} In his third assignment of error, Mr. Carr argues that the trial court erred in failing to grant his Criminal Rule 29 motion. He also argues that his convictions are against the manifest weight of the evidence. This Court does not agree.

{¶28} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Slevin*, 9th Dist. Summit No. 25956, 2012-Ohio-2043, ¶ 15.

> A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. * * * 'While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion.'

*State v. Adams*, 9th Dist. Summit No. 26009, 2012-Ohio-4382, ¶ 8, citing *State v. Gulley*, 9th Dist. No. 19600, 2000 WL 277908, *1 (Mar. 15, 2000). Mr. Carr's assignment of error is presented in terms of challenging both the sufficiency and the manifest weight of the evidence. However, he does not develop any argument regarding the sufficiency of the evidence and this Court will not create one for him. *See* App.R. 16(A)(7). Mr. Carr instead focuses his argument on the manifest weight of the evidence by arguing that there was no forensic evidence that linked him to the scene and that the witnesses were not credible. This Court limits its review accordingly.

{¶29} To determine whether Mr. Carr's convictions are against the manifest weight of the evidence, this Court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*

{¶30} Mr. Carr argues that his convictions were against the manifest weight of the evidence because there was no forensic evidence that linked him to the murder and the eye witnesses that testified at trial were not credible. He specifically questions the credibility of Mr. Williams, who initially told the police that Mr. Davis was the shooter and received a favorable plea deal in exchange for his testimony against the other co-defendants.

{¶31} Mr. Williams testified that he was wearing a red jacket while Mr. Carr was wearing a black jogging suit with a hoodie at the time of the incident. He saw the flame from the single shot, fired by Mr. Carr, which killed Mr. Anderson. Mr. Williams described the gun that Mr. Carr used during the robbery as a .38 caliber revolver. According to Mr. Williams, Mr. Davis drove him to his aunt's house after the incident using a vehicle owned by Mr. Carr's mother. Mr. Williams disposed of the gun that he used in the robbery behind the house next door to his aunt's property. He testified that Mr. Carr still had his gun while the men were at his aunt's house, but that he did not know what Mr. Carr did with it afterwards. The police never recovered either gun.

{¶32} Later that evening, Mr. Carr and Mr. Williams went to the home of Mr. Carr's mother. According to Mr. Williams, Mr. Carr told him that Mr. Anderson tried to grab the gun. Mr. Carr told him that he hit Mr. Anderson with the gun and that some unfired bullets fell out

when the chamber came open. Mr. Williams admitted that, while he initially told the police he only received $100 from the robbery, the total amount taken from both Mr. Minter and Mr. Anderson was $200. Of that amount, he received $100 and Mr. Carr received $100. From his share of the proceeds, Mr. Carr gave Mr. Davis $10, which is the amount he took from Mr. Anderson. Mr. Anderson's mother testified that she gave her son $10 for gas earlier that day.

{¶33} Mr. Williams further testified that he initially refused to tell the police what occurred. He then admitted he told the police that Mr. Davis shot Mr. Anderson because he thought Mr. Davis told police that he was the shooter. According to Mr. Williams, he spoke to Mr. Carr while he was in jail. Mr. Carr told him that "everybody was saying that [Mr. Davis] did it so we might as well just say that [Mr. Davis] did it * * *." Mr. Williams acknowledged that he subsequently changed his story for a third time after reading Mr. Davis's statement to police, which did not implicate him as the shooter. He then told the police that Mr. Carr was the shooter.

{¶34} Mr. Williams testified that he pleaded guilty to manslaughter, aggravated robbery and a gun specification. Under the original indictment, he was faced with a maximum sentence of life in prison. He testified that, due to his plea deal, he could be imprisoned for a maximum of 14 years.

{¶35} Mr. Williams's identification of Mr. Carr as the shooter was corroborated by other testimony. The back seat passenger in Mr. Anderson's car, Alexander Wells, identified both Mr. Williams and Mr. Carr from a photo array shown to him by the police. Mr. Wells testified that he exited the vehicle after the men approached the car. He walked two or three steps and remained to view the incident from about three feet away. According to Mr. Wells, he saw Mr. Carr fire the gun, which he described as a revolver, that killed Mr. Anderson. Mr. Wells testified

that, while Mr. Carr was dressed all in black and had his hood up, he could still see his face. Mr. Wells considered Mr. Williams a friend and Mr. Carr an "associate," which he defined as someone he knew from the neighborhood. Several other witnesses testified that one of the robbers was dressed all in black while the other was wearing red clothing.

{¶36} In addition, Mr. Williams's testimony regarding what Mr. Carr told him about bullets coming out of the revolver during a struggle with Mr. Anderson was validated by forensic evidence. Two unfired .38 special caliber bullets were found under the rear driver's side floor mat of Mr. Anderson's car. An expert from BCI testified that the two bullet fragments recovered from Mr. Anderson's body were of the same design as the bullets discovered in the car.

{¶37} There was testimony, however, that disputed Mr. Williams's version of the events. Marcus Minter, the front seat passenger in Mr. Anderson's car, denied knowing who robbed him as it was dark and he could not adequately see. Despite testimony from Mr. Williams that he and Mr. Minter had an on-going feud, Mr. Minter initially denied knowing him or that the two men had a feud. Later in his testimony, however, he admitted to knowing of Mr. Williams and identified a photo of Mr. Williams as the person who robbed him. Mr. Minter denied telling Mr. Anderson to move the car and testified that it was in gear when the robbers approached. According to Mr. Minter, he did not see Mr. Anderson and Mr. Carr struggle over the gun.

{¶38} While most of the witnesses described hearing two or three shots, some witnesses testified that they heard more. There was also testimony presented that Mr. Williams's younger brother was shooting a gun, possibly at Mr. Minter, in a nearby alley immediately after the incident. The police did not, however, recover any bullet casings at the scene.

{¶39} Mr. Wells's testimony, the only witness other than Mr. Williams who positively identified Mr. Carr as the shooter, conflicted with Mr. Williams's testimony on several points. He testified that he observed Mr. Williams punch Mr. Minter, which Mr. Minter denied. Mr. Wells also admitted that, at the time of the incident, he was on a "[m]ediocre" high after smoking marijuana in the car. Mr. Wells further testified that he saw Mr. Carr, Mr. Davis and Mr. Williams riding around in a blue Geo Tracker after the incident. Mr. Williams denied that the men left the scene in a Tracker.

{¶40} In addition, the testimony established a connection between Mr. Williams and Mr. Wells even after the incident. Mr. Williams admitted that he spoke to Mr. Wells while he was in jail. Mr. Wells contributed money to his jail account despite the fact that Mr. Williams was involved in the robbery and murder of his close friend.

{¶41} Mr. Carr presented the testimony of his mother, Sarina Lawrence, in his defense. Ms. Lawrence testified that Mr. Carr was at home with her on January 11, 2012, between 3:00 p.m. and 11:45 p.m. She denied either knowing Mr. Williams or that he was at her home the day of the incident. However, according to Mr. Williams, the men used Ms. Lawrence's car to flee the scene after the incident. Ms. Lawrence denied that Mr. Carr ever drove her car. While the police made castings of tire tracks found at the scene, they were never compared to Mrs. Lawrence's car as it was stolen almost one month after the incident and never recovered.

{¶42} Numerous witnesses testified at trial including some who, despite having observed the events leading up to and including the murder of Mr. Anderson, admitted to initially lying to the police about the identity of the shooter and subsequently changed their story. The jury was informed of Mr. Williams's varying accounts of the incident and the fact that he pleaded guilty to reduced charges in the case pursuant to a plea deal. Further, the jury was

instructed that, because Mr. Williams was an accomplice in the crime, his "admitted or complicit testimony * * * may affect his credibility or believability and make his testimony subject to grave suspicion and require that it be weighed with great caution." "[A] jury is free to believe or reject the testimony of each witness, and issues of credibility are primarily reserved for the trier of fact." *State v. Miles,* 9th Dist. Summit No. 26187, 2012–Ohio–2607, ¶ 24, quoting *State v. Rice,* 9th Dist. Summit No. 26116, 2012–Ohio–2174, ¶ 35. "This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness' testimony over the testimony of others." *State v. Hill*, 9th Dist. Summit No. 26519, 2013-Ohio-4022, ¶ 15. After a careful review of the record, this Court cannot conclude that this is the extraordinary case where the jury clearly lost its way resulting in a manifest injustice. *Otten*, 33 Ohio App.3d at 340. Accordingly, this Court overrules Mr. Carr's third assignment of error.

## ASSIGNMENT OF ERROR IV

MR. CARR'S SENTENCE WAS UNCONSTITUTIONAL AND CONTRARY TO LAW.

{¶43} In his fourth assignment of error, Mr. Carr argues that the trial court erred when it failed to determine whether his convictions for aggravated murder and aggravated robbery were allied offenses of similar import. He further maintains that his sentence was unconstitutional as it was disproportionate to his co-defendant's sentence. We do not agree.

{¶44} Revised Code Section 2941.25(A) states that "[w]here the same conduct by [a] defendant can be construed to constitute two or more allied offenses of similar import, * * * the defendant may be convicted of only one." If, however, "the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, * * * the

defendant may be convicted of all of them." R.C. 2941.25(B). "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, syllabus. A plurality of the Ohio Supreme Court held in *Johnson* that: "[T]he question is whether it is possible to commit one offense and commit the other with the same conduct * * *." (Emphasis deleted.) *Id*. at ¶ 48. "If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." *Id*. "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act committed with a single state of mind.'" *Id*. at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id*. at ¶ 50. "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." (Emphasis deleted.) *Id*. at ¶ 51. "Failure to merge allied offenses of similar import constitutes plain error, and prejudice exists even where a defendant's sentences are to run concurrently because 'a defendant is prejudiced by having more convictions than are authorized by law.'" *State v. Asefi*, 9th Dist. Summit No. 26430, 2012-Ohio-6101, ¶ 6, quoting *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31.

**{¶45}** Mr. Carr contends that the trial court did not apply the *Johnson* test to determine whether the aggravated murder and aggravated robbery offenses were allied offenses of similar import. At the sentencing hearing, Mr. Carr made a limited argument that, based on the facts of

the case, the offenses were allied. The State maintained that the aggravated murder and aggravated robbery offenses were separate and distinct. It argued that, while Mr. Carr's initial intent was to rob Mr. Anderson, his subsequent intent with regard to the shooting was spite and retaliation over Mr. Anderson's attempt to flee. The trial court did not make a specific finding on the record or in the sentencing entry that the offenses were or were not allied. Instead, the trial court acknowledged that it heard the evidence and proceeded to sentence Mr. Carr to consecutive prison terms of 30 years to life on the aggravated murder conviction and 10 years on the aggravated robbery conviction.

{¶46} Mr. Carr's argument that the trial court failed to apply the *Johnson* test is without merit. The sentencing entry reflects that the trial court considered *Johnson* as it cited to the case when it merged the murder and aggravated murder convictions. In addition, the trial court "heard all of the evidence" since the case proceeded to a jury trial. It was, therefore, familiar with the evidence presented at trial and had enough factual detail to decide whether the offenses are allied offenses of similar import. Finally, counsel for both Mr. Carr and the State presented arguments to the trial court prior to sentencing as to whether the offenses were allied. This Court concludes that, despite the fact that the trial court did not specifically cite to *Johnson* when pronouncing its sentence against Mr. Carr, there is evidence that the trial court considered *Johnson* and found that the offenses were not allied offenses of similar import.

{¶47} Mr. Carr further argues that the trial court erred in sentencing him to a longer prison term than his co-defendants. This Court utilizes the test set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, when reviewing criminal sentences.

> First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial

court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard.

*Id*. at ¶ 26. Mr. Carr has argued that, because he was sentenced to a longer prison term than his co-defendants, his sentence is "so disproportionate * * * that it is unfair and cruel and unusual under the 8th Amendment." He has further argued that "[c]odefendants do not have to receive equal sentences but largely disproportionate sentences suggest unfairness and lack of sentencing consistency as required by Ohio [c]ourts."

{¶48} "Consistency 'aims at similar sentences. * * * Although offenses may be similar, distinguishing factors may justify dissimilar sentences.'" *State v. Senz*, 9th Dist. Medina No. 10CA0042-M, 2011-Ohio-2604, ¶ 7, quoting *State v. Zaharie*, 9th Dist. Medina No. 09CA0077-M, 2010-Ohio-3542, ¶ 13. "'There is no requirement that codefendants receive equal sentences, however. Differences between defendants allow trial courts to impose different sentences upon individuals convicted of similar crimes.'" *Id*., quoting *State v. Allen*, 10th Dist. Franklin No. 10AP-487, 2011-Ohio-1757, ¶ 23.

{¶49} Mr. Carr was sentenced to life in prison with parole eligibility after 30 years for aggravated murder, which carried a maximum penalty of life in prison without the possibility of parole under Revised Code Section 2929.03(C)(2)(a)(i). He was sentenced to 10 years in prison for aggravated robbery, which carried a maximum penalty of 11 years imprisonment under Revised Code Section 2929.14(A)(1). On the having weapons under disability charge, Mr. Carr was sentenced to three years in prison, which was the maximum sentence under Revised Code Section 2929.14(A)(3)(b). He was also sentenced to the mandatory term of three years in prison on each gun specification. R.C. 2941.145. The sentences on the gun specifications were to be served concurrently with each other but consecutively with the other sentences. The sentences on the aggravated robbery and murder offenses were to be served consecutively while the

sentence on the having weapons under disability was to be served concurrently to the other sentences for a total sentence of 43 years to life in prison. Accordingly, Mr. Carr's prison terms were within the applicable statutory range.

{¶50} Having determined that his sentence is not contrary to law, we must next decide whether the trial court abused its discretion in imposing Mr. Carr's sentence. According to the testimony at trial, each defendant played a different role in the crime that varied in terms of the seriousness of his actions. Mr. Davis drove the getaway car, while Mr. Williams initiated and executed the robbery. Mr. Carr, however, not only participated in the robbery, he also shot and killed Mr. Anderson. At sentencing, the court noted Mr. Carr's "apparent absolute disregard for the value of a human life," found his actions to be "egregious, callous, cold, calculated and heartless," and characterized his actions as "extremely cruel." The court further noted that it could have sentenced Mr. Carr to life in prison without parole, but chose not to do so as to give him "some hope" that he would not spend the rest of his life in prison. The sentencing entry indicates that the trial court considered the principles and purposes of sentencing under Revised Code Section 2929.11 and the felony sentencing factors under Revised Code Section 2929.12.

{¶51} Given the evidence produced at trial that Mr. Carr's actions in the crimes were more serious than that of Mr. Williams and Mr. Davis, this Court cannot conclude that the trial court abused its discretion when it imposed Mr. Carr's sentence. *Kalish*, 2008-Ohio-4912 at ¶ 26. Mr. Carr's fourth assignment of error is overruled.

III.

{¶52} Mr. Carr's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

MOORE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

JILL R. FLAGG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.