[Cite as *State v. Glunt*, 2014-Ohio-3533.]

STATE OF OHIO           )                         IN THE COURT OF APPEALS
                                   )ss:                   NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA       )

STATE OF OHIO                               C.A. No.       13CA0050-M

       Appellee

       v.                                       APPEAL FROM JUDGMENT
                                               ENTERED IN THE
NICOLE R. GLUNT                        COURT OF COMMON PLEAS
                                                 COUNTY OF MEDINA, OHIO
       Appellant                             CASE No.      13CR0148

## DECISION AND JOURNAL ENTRY

Dated: August 18, 2014

---

HENSAL, Judge.

{¶1}    Appellant, Nicole R. Glunt, appeals her convictions in the Medina County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2}    Ms. Glunt's boyfriend, James Robinson, had an altercation with another patron at Johnny J's bar in Medina. During the course of the argument, Mr. Robinson pulled out a knife and attempted to stab the other patron. An off-duty Johnny J employee intervened and took the knife from Mr. Robinson after a struggle. As the employee was in the process of placing the knife on the bar, another man, Shawn Ward, took the knife from him and placed it further down the bar. Almost immediately, Ms. Glunt motioned to Mr. Ward to hand her the knife. She took it from him and placed it in her coat pocket.

{¶3}    Several minutes later, Ms. Glunt was questioned by a police officer after an employee alerted him to the fact that she was with Mr. Robinson that evening. In response to the

officer's inquiry about the knife's location, she immediately handed it over. Ms. Glunt was charged with one count of tampering with evidence in violation of Revised Code Section 2921.12(A)(1). A jury convicted her of the offense. Ms. Glunt has appealed raising four assignments of error which we combine and rearrange to facilitate our analysis.

## II.

### ASSIGNMENT OF ERROR II

MS. GLUNT'S CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN NOT GRANTING HER CRIMINAL RULE 29 MOTIONS FOR ACQUITTAL.

{¶4} Ms. Glunt argues in her second and third assignments of error that her conviction was not supported by sufficient evidence. Specifically, she maintains that the State failed to prove that she either impaired or intended to impair the knife as evidence in the police investigation.

{¶5} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Slevin*, 9th Dist. Summit No. 25956, 2012-Ohio-2043, ¶ 15. "Whether the evidence is legally sufficient to sustain a verdict is a question of law" that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The test for sufficiency requires a determination of whether the State has met its burden of production at trial. *Thompkins* at 390 (Cook, J. concurring).

{¶6} Ms. Glunt was convicted of tampering with evidence in violation of Revised Code Section 2921.12(A)(1), which provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶7} The Ohio Supreme Court recently examined Section 2921.12(A)(1) in *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139. It recognized that tampering with evidence consists of three elements: "(1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment or removal of the potential evidence, (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *Straley* at ¶ 11. Ms. Glunt's argument focuses on the second and third prongs concerning the knife's alteration, concealment or removal as evidence and her intent in taking possession of the knife. The State must establish that she altered, destroyed, concealed or removed the knife and that she "intended to impair the value or availability of evidence that related to the existing or likely official investigation or proceeding." *Id*. at ¶ 19.

{¶8} "The mere fact that a [knife] was removed from a crime scene does not support an inference that it was taken to impair its value or availability as evidence." *State v. Lollis*, 9th

Dist. Summit No. 24826, 2010-Ohio-4457, ¶ 30. Further, we note that it is not necessary for the State to set forth direct evidence of a tampering with evidence offense. *State v. Simpson*, 9th Dist. Lorain No. C.A. 11CA010138, 2012-Ohio-3195, ¶ 24. "Circumstantial evidence may suffice." *Id*.

{¶9}  Johnny J employee, Seth Starman, testified that he was playing pool after having just ended his shift. Mr. Starman heard a chair scrape against the floor and turned to see two men "tussling" over a knife. According to him, he wrestled the knife away from the men and set it in the divot on the bar where the dirty glasses are placed. He neither saw the knife again nor could testify to what happened to it after he placed it on the bar. Mr. Starman testified that he helped escort Mr. Robinson to the front of the bar where he continued to struggle. The two women who were there with Mr. Robinson, Ms. Glunt and Elizabeth Cox, kept trying to persuade the Johnny J employees to get off of Mr. Robinson so that they could leave.

{¶10}  Another Johnny J employee, Chris Maraessa, testified that he assisted other employees in attempting to subdue Mr. Robinson. According to Mr. Maraessa, he pushed Ms. Glunt's hand away when she tried to reach into Mr. Robinson's pockets. Thereafter, she yelled at the employees to reach into Mr. Robinson's pockets and to let him go.

{¶11}  Sergeant Nathan Simpson testified that after he arrived at Johnny J's, he searched for the knife. Witnesses pointed out a spot on the top of the bar where the knife was placed, but his search failed to locate it. According to Sergeant Simpson, he learned from Mr. Maraessa that two females were there with Mr. Robinson at the time. Sergeant Simpson reported that Mr. Maraessa pointed out Ms. Glunt and Elizabeth Cox who were outside the bar near an ambulance where Mr. Robinson was receiving medical attention for his injuries. Sergeant Simpson testified that, after he determined Ms. Glunt was Mr. Robinson's girlfriend, he asked her if she had the

knife. She replied that she did and retrieved it from her coat pocket without hesitation. According to Sergeant Simpson, she explained that she took the knife because "she didn't know what was going on. She saw her boyfriend with a bloody hand and the next thing she knew, she grabbed the knife and took it." Sergeant Simpson's uncontroverted testimony was that Ms. Glunt did not volunteer the fact that she had the knife and that she did not immediately pull the knife out of her pocket as soon as he approached her before asking her any questions. There was no evidence that the knife was physically altered in any way or that is was unavailable for use as evidence in Mr. Robinson's criminal case. Sergeant Simpson testified that he spoke with Ms. Glunt approximately 10 and one-half minutes after the incident.

{¶12} Elizabeth Cox testified that she accompanied Ms. Glunt and Mr. Robinson that day as they ran errands, went to a restaurant in Seville to have a beer, and then to Johnny J's. Ms. Cox stated that all three of them were "pretty intoxicated" due to the fact that they had not eaten anything all day and were consuming shots of liquor. According to her, Ms. Glunt consumed five or six shots of liquor at Johnny J's.

{¶13} She reported that Ms. Glunt and Mr. Robinson introduced her to their friend, Shawn Ward, who was also at Johnny J's with another man named John Talpas. According to Ms. Cox, Mr. Ward and Mr. Talpas were sitting in the back of the bar while she, Ms. Glunt, and Mr. Robinson were sitting near the front. She testified that her group was getting ready to leave when Mr. Robinson approached Mr. Talpas and a disagreement followed that led to Mr. Robinson pulling out a knife.

{¶14} Ms. Cox testified that she witnessed Mr. Robinson pull the knife from his back pocket, but that she did not see it again until she saw Ms. Glunt hand it to Sergeant Simpson. She reported that Ms. Glunt did not discuss the knife with her. According to Ms. Cox, she was

standing 10 feet away from Ms. Glunt during her discussion with Sergeant Simpson. She overheard Ms. Glunt tell him that she was "so messed up right now" and that she did not know what was going on. Ms. Cox further testified that Ms. Glunt reported to Sergeant Simpson that she grabbed the knife to make sure no one else got hurt.

{¶15} The jury viewed the surveillance video from Johnny J's that recorded the events leading up to and including the altercation between Mr. Robinson and Mr. Talpas. It showed Ms. Glunt joining Mr. Robinson approximately three minutes after he approached Mr. Ward and Mr. Talpas in the back of the bar. She stood within a few feet of both Mr. Talpas and Mr. Robinson when the incident occurred. The video revealed that, as Mr. Starman went to put the knife down after taking it from Mr. Robinson, Mr. Ward took it from him and moved it further down the bar. Almost immediately, Ms. Glunt extended her hand toward Mr. Ward and he handed her the fully-extended knife. Ms. Glunt closed the knife and put it in her coat pocket. The video further showed several police officers and Johnny J employees searching for the knife around the bar area after the incident.

{¶16} Viewing the evidence in a light most favorable to the State, this Court concludes that there was sufficient evidence to convict Ms. Glunt of tampering with evidence in violation of Revised Code Section 2921.12(A)(1). A rational trier of fact could have found that Ms. Glunt knew that an investigation was likely to ensue given that Mr. Robinson attempted to harm Mr. Talpas with a knife and that the knife would be potential evidence in his likely future prosecution. Further, the video demonstrated that Ms. Glunt quickly removed the knife from the immediate scene of the incident, and Mr. Starman and Mr. Maraessa both testified that she was yelling at them to let Mr. Robinson go so they could leave Johnny J's. While Ms. Glunt gave the knife to Sergeant Simpson when he asked for it, the jury could reasonably infer from the video

and witness testimony that Ms. Robinson concealed and removed the knife from the scene with the purpose of impairing its availability for use as potential evidence in the investigation. Accordingly, Ms. Glunt's second and third assignments of error are overruled.

ASSIGNMENT OF ERROR I

MS. GLUNT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} In her first assignment of error, Ms. Glunt argues that her conviction was against the manifest weight of the evidence. This Court disagrees.

{¶18} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." *State v. Carr*, Summit No. 26661, 2014-Ohio-806, ¶ 28, quoting *State v. Adams*, 9th Dist. Summit No. 26009, 2012-Ohio-4382, ¶ 8. To determine whether a conviction is against the manifest weight of the evidence, this Court

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d at 387. The appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶19} Ms. Glunt reiterates the same argument she made in both her second and third assignments of error that there was no evidence that she removed or concealed the knife with purpose to impair its value or availability as evidence in the investigation.

{¶20} Sergeant Simpson testified that Ms. Glunt told him she did not know what happened but that "[s]he saw her boyfriend with a bloody hand and the next thing she knew, she grabbed the knife and took it." Despite Ms. Cox's testimony to the contrary, Sergeant Simpson testified that he did not recall Ms. Glunt telling him that she took the knife so that no one would get injured.

{¶21} Officer Josh Grusendorf testified that he took custody of Ms. Glunt when she turned herself in on March 4, 2013, after a warrant was issued for her arrest. He witnessed a written statement Ms. Glunt completed wherein she stated in part that:

> We were getting ready to leave. I went to the bathroom and paid our tab. The next thing I knew [Mr. Robinson] was being held against the wall, his head was being hit off of the wall in front of him and his hands were being held above his head with a knife in it. I got the knife from him to stop any injuries from happening in case he dropped it. I put the knife in my pocket[.] I did not want to lay it on the bar or anything so someone else could get it.

{¶22} The State points out that the surveillance video belies both Ms. Glunt's statement to Sergeant Simpson and her own written statement. The video shows that she did not take the knife directly from Mr. Robinson, but rather from Mr. Ward after she asked for it and after it was already placed on the bar. The video further shows that Mr. Robinson was at the bar rather than near a wall at the time the knife was taken from him.

{¶23} It was within the jury's province to determine the weight to be given the evidence. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. On the one hand, it could have found that Ms. Glunt took the knife with the intent to prevent additional harm to others. The jury, however, in convicting her, did not believe her stated reason for taking the knife, as articulated to Sergeant Simpson and in her written statement. "A conviction is not against the manifest weight [of the evidence] because the jury chose to credit the State's version of the events." *State v. Wilson*, 9th Dist. Summit No. 26683, 2014-Ohio-376, ¶ 31, quoting *State*

*v. Minor*, 9th Dist. Summit No. 26362, 2013-Ohio-558, ¶ 28. *See also State v. Gay*, 9th Dist. No. 26487, 2013-Ohio-4169, ¶ 26 (Noting that the jury had the video of the incident to assist it in resolving inconsistent witness testimony in reaching its decision.) This Court cannot conclude that the jury clearly lost its way in convicting Ms. Glunt of tampering with evidence. Her first assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE STATE COMMITTED REVERSIBLE ERROR BY REPEATED ACTS OF PROSECUTORIAL MISCONDUCT DURING CLOSING STATEMENTS THAT DENIED MS. GLUNT A FAIR TRIAL.

{¶24} In her fourth assignment of error, Ms. Glunt argues that she was denied her constitutional right to a fair trial when the prosecutor engaged in numerous instances of misconduct during closing arguments. We disagree.

{¶25} Ms. Glunt asserts that the State committed misconduct by: (1) stating that "[t]here's no such thing" as her argument that she was not guilty of tampering since the knife was not destroyed and was available as evidence; (2) characterizing her theory of the case as a "distraction" and that she was making a "spurious argument;" (3) claiming that she lied to the police about the incident and her purpose in taking the knife; (4) criticizing her defense counsel for "switch[ing] gears" and doing "mental gymnastics" in order to explain the contradiction between her written statement and the video; (5) accusing her counsel of "doing exactly what he's not supposed to do" in comparing the facts of her case to the facts of other more serious tampering cases; (6) telling the jury he did not want them to "pull a muscle in [their] brain trying to follow [defense counsel's] argument because it's not even worth it," (7) stating that she had a consciousness of guilt; and (8) proposing to the jury that Mr. Robinson's defense counsel may

question whether the knife was the one used in the altercation because Ms. Glunt intervened in the chain of custody of the knife and fingerprints may have been wiped off in the process.

{¶26} The record reflects that Ms. Glunt failed to object to any of these alleged instances of prosecutorial misconduct. Accordingly, she has forfeited all but plain error. *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 242. This Court, however, declines to address the merits of her argument because Ms. Glunt has failed to argue plain error on appeal. *State v. Ball*, 9th Dist. Summit No. 26537, 2013-Ohio-3506, ¶ 44; *State v. Charlton*, 9th Dist. Lorain No. 12CA010206, 2014-Ohio-1330, ¶ 36 ("[T]his court will not sua sponte undertake a plain-error analysis if a defendant fails to do so.") Accordingly, her fourth assignment of error is overruled.

III.

{¶27} Ms. Glunt's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

BELFANCE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

MICHAEL J. CALLOW, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.