[Cite as *State v. Banks*, 2017-Ohio-8777.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    16CA0084-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KEVIN BANKS | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.    16 CR 0369 |

DECISION AND JOURNAL ENTRY

Dated: December 4, 2017

TEODOSIO, Judge.

{¶1}    Appellant, Kevin Banks, appeals from his convictions in the Medina County Court of Common Pleas.  We affirm.

I.

{¶2}    In June of 2016, seventeen-year-old H.E. went into a fitting room in the Medina Target to try on some bikinis and dresses.  Mr. Banks entered the dressing room area five seconds after H.E. and chose a dressing room directly across from her.  When H.E. saw clothes already piled up in her room and decided to switch to a different room, Mr. Banks also switched to another room, again directly across from her.  While in a state of undress, H.E. looked in her fitting room mirror and saw an arm holding a cell phone up above Mr. Banks' fitting room door with the phone's camera facing her.  She quickly clothed herself, snuck out of the fitting room, and told a store employee.

{¶3} Mr. Banks left his own fitting room twenty-five seconds after H.E. left hers, looked toward H.E. and the employee while he was walking away, and quickly headed toward the store's exit after H.E. said, "That's the man." He left the store through the shopping cart only doors, removed the tank top he was wearing, and used it to cover up his rear license plate number. By chance, a retired police officer was in the store's parking lot and saw Mr. Banks running out of the store while removing his shirt, so he followed Mr. Banks' vehicle and called police. A few minutes later, Mr. Banks pulled into a driveway, exited his vehicle to retrieve his tank top, and then re-entered the vehicle and resumed driving until a uniformed officer conducted a traffic stop of the vehicle.

{¶4} Mr. Banks was arrested and charged with voyeurism and tampering with evidence. He waived his right to a jury trial on the voyeurism count only. The case proceeded to trial whereby a jury heard and decided the tampering with evidence count and the trial court judge heard and decided the voyeurism count. Mr. Banks was found guilty of both charges and sentenced to an aggregate total of twenty-four months in prison.

{¶5} Mr. Banks now appeals from his convictions and raises three assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY VERDICT OF "GUILTY" AS TO THE TAMPERING WITH EVIDENCE COUNT AND THE [TRIAL] COURT'S VERDICT OF [GUILTY] AS TO THE VOYEURISM [COUNT] OF THE INDICTMENT, AND THE APPELLANT'S CONVICTIONS AS TO BOTH COUNTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶6} In his first assignment of error, Mr. Banks argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. We disagree with both propositions.

## Sufficiency of the Evidence

{¶7} "A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo." *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, ¶ 6, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶8} Mr. Banks was convicted of voyeurism under R.C. 2907.08(C), which states:

> No person, for the purpose of sexually arousing or gratifying the person's self, shall commit trespass or otherwise surreptitiously invade the privacy of another to videotape, film, photograph, otherwise record, or spy or eavesdrop upon the other person in a state of nudity if the other person is a minor.

R.C. 2901.22(A) states:

> A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

{¶9} H.E testified that she was seventeen years old in June of 2016 when she went to Target to shop for some new dresses and bikinis. She went to the fitting room area and noticed an older man who seemed to be "dressed as a teenager" wearing a striped tank top and shorts who "kind of followed [her] in there." She later identified the man in court as Mr. Banks. H.E. went into the second fitting room on the left, while Mr. Banks went into the second fitting room on the right, directly across from her. H.E. saw a lot of clothing already in her fitting room and thought someone may have recently left it to go get more clothes. She then changed rooms and went into the third fitting room on the left. Mr. Banks also changed rooms and entered the third fitting room on the right, again directly across from H.E. H.E. testified that Mr. Banks' room change "[was] the reason why I paid attention, because I thought it was very strange that he decided to change to the one right across from me." H.E. began changing into a bikini in her fitting room. Once she was undressed and in her underwear, she looked in the mirror and saw most of a forearm and a black cell phone above the door of the fitting room directly across from her with the camera facing her direction "as if he was trying to get as much angle into getting a picture of [her] as possible."

{¶10} H.E. testified that she immediately dropped to the ground and tried to remain calm without making any noise. She grabbed the first dress within reach and clothed herself. She quietly crawled underneath the door without opening it and went to inform the fitting room operator ("T.F.") who was working in the employee closet at the entrance to the fitting room area. H.E. whispered to T.F. what happened and T.F. immediately called her manager using her walkie-talkie. H.E. was scared and started crying. Twenty-five seconds after H.E. left her fitting room, Mr. Banks emerged from the fitting room area. H.E. said to T.F., "That's the man."

{¶11} The State entered several surveillance camera videos into evidence. A surveillance video from outside the fitting room area shows H.E. entering the fitting rooms, followed closely by Mr. Banks merely five seconds later. After a few minutes, H.E. can be seen coming out of the fitting room area and entering the room or closet at the entrance to the fitting room area, seemingly searching for a Target employee. T.F. can then be seen coming out of the room and using her walkie-talkie. Twenty-five seconds after H.E. comes out of the fitting room area, Mr. Banks exits the fitting room area while noticeably looking directly toward the room occupied by H.E. and T.F. as he walks away. The testimony from multiple witnesses differed slightly as to whether Mr. Banks then walked briskly, jogged, or ran away from the fitting room area, and soon thereafter out of the store and into the parking lot. The surveillance video shows him looking toward the fitting room closet and then visibly increasing his speed to a faster walk and eventually a slight jog as he moves out of view of the camera. A second surveillance video from a camera at the store's entrance facing inward shows what appears to be Mr. Banks, although only his lower body and part of his shirt are visible, walking quickly from the back of the store and heading toward the store's front doors. His pace again increases to a slight jog as the video abruptly ends.

{¶12} Target's leader on duty ("LOD") that day testified that T.F. notified her of the voyeurism incident via walkie-talkie. As the LOD was leaving her office at the front of the store to head back to the fitting room area, she saw a man run out of the store. Mr. Banks did not leave the store through the normal exit doors, but chose to leave through the shopping cart only doors, which T.F. testified is "unusual" because those doors are "just for carts."

{¶13} Mr. Banks argues that the State did not present sufficient evidence to prove that he surreptitiously invaded H.E.'s privacy to videotape, film, photograph, otherwise record, or spy

or eavesdrop upon her. He further argues that the State did not present sufficient evidence that his actions were done for the purpose of sexual arousal or gratification.

{¶14} "Surreptitious" is defined as "unauthorized and clandestine; done by stealth and without legitimate authority." Black's Law Dictionary (10th Ed.2014). The State presented evidence that Mr. Banks followed H.E. into the dressing room area, chose a room directly across from her, and then changed rooms once she changed rooms, so as to still be directly across from her. While changing and in a state of undress, H.E. saw an arm holding a cell phone above Mr. Banks' fitting room door with the camera pointed at her, as if to get the best angle possible of her. Therefore, we disagree with Mr. Banks' arguments and conclude that the evidence, if believed, established that Mr. Banks surreptitiously invaded H.E.'s privacy to videotape, film, photograph, otherwise record, or spy or eavesdrop upon her in her private fitting room with the use of his cell phone.

{¶15} As to the sexual arousal or gratification purpose element, courts have held that it "'may be inferred when there is no innocent, i.e., nonsexual, explanation for the offender's conduct.'" *State v. Goldblum*, 2d Dist. Montgomery No. 25851, 2014-Ohio-5068, ¶ 17, quoting *State v. Wilson*, 192 Ohio App.3d 189, 2011-Ohio-155, ¶ 47 (11th Dist.). *See also State v. Haldeman*, 2d Dist. Montgomery No. 18199, 2000 Ohio App. LEXIS 5409, *7 (Nov. 22, 2000) ("The fact that Defendant was neither in a state of undress nor had engaged in masturbation does not prevent a finding that his purpose was sexual gratification or arousal, if that can rationally be inferred from other evidence presented.") The evidence presented established very unusual conduct by Mr. Banks surrounding the incident from which a purpose of sexual arousal or gratification could be inferred: He followed H.E. into the fitting room area five seconds after she entered, chose a fitting room directly across from her, changed rooms once she changed rooms

so as to still be directly across from her, held his cell phone above his door with the camera facing H.E., and then left his fitting room twenty-five seconds after H.E. left her room. Given Mr. Banks' secretive tactics and unusual conduct, we conclude that the trier of fact could have reasonably inferred that his actions were done for the purpose of sexual arousal or gratification. *See State v. Huffman*, 165 Ohio App.3d 518, 2006-Ohio-1106, ¶ 64 (1st Dist.)

{¶16} Upon review of the evidence presented in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production as to the offense of voyeurism. Furthermore, any rational trier of fact could have found all of the essential elements of voyeurism proven beyond a reasonable doubt.

{¶17} Mr. Banks was also convicted of tampering with evidence under R.C. 2921.12(A)(1), which states, in part: "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * *." "Likelihood is measured at the time of the act of alleged tampering." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 19. "[I]t is not necessary for the State to set forth direct evidence of a tampering with evidence offense. 'Circumstantial evidence may suffice.'" (Citation omitted.) *State v. Glunt*, 9th Dist. Medina No. 13CA0050-M, 2014-Ohio-3533, ¶ 8, quoting *State v. Simpson*, 9th Dist. Lorain No. C.A. 11CA010138, 2012-Ohio-3195, ¶ 24. R.C. 2901.22(B) states:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

Again, "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."  R.C. 2901.22(A).

{¶18}  Target's LOD on the day of the incident testified that when she was radioed about the alleged voyeurism incident, she saw a man run out of the store and she followed him outside to try to get his license plate number.  She saw the man take off his tank top and throw it over the license plate of his "dark red, maroon truck."  Consequently, she was unable to obtain the license plate number.

{¶19}  Retired police officer M.E. testified that he was in his vehicle in the Target parking lot when he saw Mr. Banks "sprinting out of the front of the store and * * * taking his shirt off at the same time."  M.E. saw Mr. Banks get into a maroon pickup truck.  Once he was able to get behind Mr. Banks, he noticed the license plate number on Mr. Banks' truck was covered by a shirt.  M.E. called the police and followed Mr. Banks "at a comfortable distance so he wouldn't think that anybody was behind him."  Mr. Banks drove away and made multiple turns onto different streets, stopping once for a red light.  M.E. observed Mr. Banks pull into a driveway, exit his truck, retrieve the shirt that was concealing his license plate number, and put it back on himself to wear.  M.E. continued to follow Mr. Banks while staying on the phone with the police until a uniformed Medina police officer in a marked cruiser was able to conduct a traffic stop of Mr. Banks' truck.

{¶20}  Medina Township police officer Cliff Nicholson testified that he conducted the traffic stop of Mr. Banks' truck.  He requested and received confirmation of the alleged voyeur's description over the radio and the information matched Mr. Banks.  Officer Nicholson asked Mr.

Banks where he was coming from and Mr. Banks said, "Target." He then asked Mr. Banks what he was doing at Target and Mr. Banks requested an attorney. The officer handcuffed Mr. Banks and patted him down before removing a wallet, a black cell phone, and a soiled, sticky napkin from his pockets.

{¶21} Detective Joshua Grusendorf of Medina City police testified that he arrived at the traffic stop and spoke to Mr. Banks about the voyeurism incident in the rear of a police cruiser. Mr. Banks told the detective that he had been "taking pictures of himself while he was in the dressing room at Target, that he had been trying on tank tops and was using his phone to view himself." Mr. Banks also said that "he ran out of the store because he heard the female next to him, in the stall next to him, say something to the effect of, 'Oh, my goodness,' or something to that effect." He told the detective that "he had an OVI and some other things, so he got scared and ran out of the store."

{¶22} Mr. Banks now claims that when he exited the dressing room and H.E. pointed at him, it instantly triggered his post-traumatic stress disorder ("PTSD") and sent him into a "panicked, trance-like state," whereby he walked away from the fitting room area at a brisk pace, exited the store through the shopping cart only doors, removed his tank top, covered his license plate number, and drove away in his truck. After driving for a few minutes, his "mind became clear again," so he pulled over, retrieved the tank top that was concealing his license plate number, and then continued on his way until he was pulled over by Medina police. He asserts that no Target employees or police officers stopped him while he was in the store or in the parking lot when he concealed his license plate number.

{¶23} Accordingly, Mr. Banks argues that the State failed to prove he had knowledge "that an official proceeding or investigation [was] in progress, or [was] about to be or likely to be

instituted." He also argues that his concealment of the license plate number did not "impair its value or availability as evidence in such proceeding or investigation" because no investigation had commenced, the license plate number was only obstructed briefly for a couple minutes, and his *front* license plate number was never obstructed. Aside from these arguments, Mr. Banks has not otherwise challenged the propriety of his tampering-with-evidence conviction.

{¶24} Constructive knowledge of a pending or likely investigation is not imputed to the offender in a tampering with evidence charge. *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, syllabus. "[M]erely establishing that the crime committed is an unmistakable crime is insufficient to prove that the accused knew at the time the evidence was altered, destroyed, concealed, or removed that an official proceeding or investigation into that crime was ongoing or likely to be instituted." *Id.* "Nonetheless, the intent required by R.C. 2921.12(A)(1) can be inferred by the defendant's words, actions, and demeanor *after* a crime has been committed." (Emphasis sic.) *State v. Price*, 9th Dist. Summit No. 28291, 2017-Ohio-4167, ¶ 18. In the case sub judice, the State had to prove that Mr. Banks knew an investigation into the voyeurism incident was pending *or likely* at the time he concealed his license plate number.

{¶25} The evidence presented at trial, if believed, established that Mr. Banks knew an investigation was likely, based on his actions immediately after the voyeurism incident occurred. Mr. Banks had just been holding his cell phone up above his fitting room door with the phone's camera facing into H.E.'s fitting room. Mr. Banks even admitted to Detective Grusendorf that he had been holding up his cell phone in the Target fitting room, although he claimed to only be viewing and taking pictures of himself. Once H.E. left her fitting room, Mr. Banks immediately left his own room merely twenty-five seconds later. As Mr. Banks walked away, H.E. pointed him out to an employee and said, "That's the man." Mr. Banks' immediate response was to

quickly flee the fitting room area and leave the store through doors not intended for use as an exit. He ran through the parking lot and covered his license plate number with his shirt before driving away from the area.

{¶26} We conclude that a jury could have reasonably inferred from Mr. Banks' highly unusual conduct that he knew an investigation into the voyeurism incident was likely at the time he was concealing his license plate number. Moreover, Mr. Banks has provided us with no case law supporting his argument that an employee or police officer must stop an offender after he has allegedly committed a crime for the offender to have knowledge that an investigation is in progress or is likely to be instituted. It is also worth noting that Mr. Banks' reliance on his supposed PTSD trance to explain his unusual behavior was not included in the evidence before the jury for his tampering with evidence charge. Mr. Banks only testified that he suffered from PTSD during his bench trial for voyeurism, not during his jury trial for tampering with evidence.

{¶27} Tampering with evidence also "requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, syllabus. Thus, the State had to prove that Mr. Banks concealed his license plate number purposely to impair its availability as evidence in the likely voyeurism investigation.

{¶28} We find no merit in Mr. Banks' argument that no investigation had commenced at the time he concealed his license plate number. The State did not have to prove that an official investigation existed, but rather that one was *likely*. *See id.* We have already concluded above that a jury could have reasonably inferred from Mr. Banks' conduct that he knew an investigation into the voyeurism incident was likely. Furthermore, Mr. Banks has not directed us to any law that supports his arguments that: (1) the concealment of potential evidence must last

beyond the timeframe of a couple minutes to support a conviction for tampering with evidence, or (2) one cannot be convicted of tampering with evidence if the concealed evidence is the rear license plate number on a vehicle while the front license plate number is not concealed. Thus, we conclude that these arguments are meritless as well.

{¶29} Upon review of the evidence presented in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production as to the offense of tampering with evidence. Furthermore, any rational trier of fact could have found all of the essential elements of tampering with evidence proven beyond a reasonable doubt. Our conclusion here is specifically limited to the unique facts and circumstances of this case.

Manifest Weight of the Evidence

{¶30} Mr. Banks also claims that his convictions are against the manifest weight of the evidence. This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶31} Mr. Banks claims that his convictions are against the manifest weight of the evidence, but does not present or develop any meaningful argument in support of his claim beyond stating: "Even assuming arguendo that the [evidence was sufficient], an independent re-weighing of that same evidence demonstrates the evidence weighs heavily against * * * conviction." "[S]ufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vincente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. Mr. Banks has not challenged the evidence set forth by the State as "unreliable or lacking credibility." *See State v. Smith*, 9th Dist. Summit No. 27877, 2016-Ohio-7278, ¶ 16. Accordingly, this Court will not develop a manifest weight argument on his behalf. *See State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 32.

{¶32} Accordingly, Mr. Banks' first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

APPELLANT WAS DENIED A FAIR TRIAL WHERE, CONTRARY TO R.C. 2907.02(D), EVID.R. 402, EVID.R. 403(A) AND EVID.R. 404(B), THE TRIAL COURT PERMITTED THE STATE TO INTRODUCE UNFAIRLY PREJUDICIAL TESTIMONY AND EVIDENCE CONCERNING APPELLANT'S ALLEGED PRIOR OTHER ACTS.

{¶33} In his second assignment of error, Mr. Banks argues that the trial court erred in permitting the State to elicit testimony from him regarding prior, unrelated arrests and statements he made to a mental health professional. We disagree.

{¶34} We note that Mr. Banks did not object to this evidence at trial and has thus forfeited all but plain error. *See State v. Brantley*, 9th Dist. Summit No. 27466, 2016-Ohio-4680, ¶ 71. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "[The] error must be obvious and have a substantial adverse impact on the integrity of and the public's confidence in judicial proceedings

* * *." *State v. Tichon*, 102 Ohio App.3d 758, 767 (9th Dist.1995). "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Elkins*, 9th Dist. Summit No. 19684, 2000 Ohio App. LEXIS 4670, *25 (Sept. 27, 2000). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶35} Although Mr. Banks cites to Crim.R. 52(B) and states in his brief that the trial court committed "prejudicial and plain error" by allowing the State to elicit specific testimony from him at trial, he does not develop a plain error argument any further. "Such a conclusory statement is insufficient for purposes of establishing error on appeal." *State v. Dudley*, 9th Dist. Summit No. 28364, 2017-Ohio-7044, ¶ 16, citing App.R. 16(A)(7). Mr. Banks does not develop any argument demonstrating how the alleged error affected the outcome of the trial. *See State v. Young*, 9th Dist. Summit No. 26725, 2014-Ohio-1715, ¶ 40. Consequently, this Court will not create a plain error argument on his behalf. *See State v. Grad*, 9th Dist. Medina No. 15CA0014-M, 2016-Ohio-8388, ¶ 18.

{¶36} Mr. Banks' second assignment of error is overruled.

### ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DENYING HIS PRETRIAL & RENEWED MOTIONS FOR RELIEF FROM [PREJUDICIAL] JOINDER OF OFFENSES UNDER CRIM.R. 14.

{¶37} In his third assignment of error, Mr. Banks argues that the trial court erred by denying his motion for relief from prejudicial joinder because he was unable to exercise his constitutional right to remain silent and not testify as to the voyeurism count if he chose to testify as to his tampering with evidence count. We disagree.

**{¶38}** Crim.R. 8(A) allows for the joinder of two offenses in the same indictment if the offenses "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." "The law favors joining multiple criminal offenses in a single trial under Crim.R. 8(A)." *State v. Franklin*, 62 Ohio St.3d 118, 122 (1991). Nonetheless, if it appears that a defendant is prejudiced by a joinder of offenses, "the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires." Crim.R. 14.

**{¶39}** To prevail on a claim that the trial court erred in denying his motion for relief from prejudicial joinder, Mr. Banks bears the burden of affirmatively demonstrating:

> (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against [his] right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial.

*State v. Schaim*, 65 Ohio St.3d 51, 59 (1992). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). To analyze a claim of prejudice by joinder of the offenses, we must "determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *Schaim* at 59.

**{¶40}** Mr. Banks fails to analyze the factors set forth in *Schaim*. He only claims that he sought to testify as to the tampering with evidence count while remaining silent as to the voyeurism count, and that he was prejudiced when prior other acts evidence was admitted on cross-examination regarding his viewing of pornography and his other arrests and charges that

would not have been admitted in a separate trial for voyeurism. However, Mr. Banks does not explain why this would be true. *See State v. Zoubaier*, 9th Dist. Summit No. 26049, 2012-Ohio-2888, ¶ 12. Moreover, as the trial court correctly explained in its denial of Mr. Banks' renewed motion to sever at trial:

> [A]ll of the things that the witnesses would have testified to in [the tampering with evidence] case were the same things they would have had to testify to in the voyeurism issue. * * * [W]hen the State of Ohio is presenting evidence about the tampering with evidence and an investigation or an official investigation that was instituted or likely to be instituted, there would have to be discussion about what the investigation was, so all kinds of things that would be describing what that investigation was are exactly the things that would be presented in the voyeurism charge.

This Court will not undertake an analysis of the *Schaim* factors on behalf of Mr. Banks when he has not done so himself. *See State v. Abraham*, 9th Dist. Summit No. 26258, 2012-Ohio-4248, ¶ 12. "If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out." *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 & 18673, 1998 Ohio App. LEXIS 202, *22 (May 6, 1998).

{¶41} Mr. Banks' third assignment of error is overruled.

III.

{¶42} Mr. Banks' first, second, and third assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT


HENSAL, P. J.
CARR, J.
CONCUR.


APPEARANCES:

RONALD SCOTT SPEARS, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.